IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DANNY HADDOX, et al.,

      Plaintiffs,

v.

CENTRAL FREIGHTLINES, INC.;
NICHOLAS ROSHON MOORE,

      Defendants.

Case No. 18-CV-266-SEH-CDL

**OPINION AND ORDER**

Before the Court are Defendants Central Freightlines, Inc. and Nicholas Roshon Moore's (collectively, "Defendants") Motion to Strike Plaintiffs' Expert, Daniel Phillips [ECF No. 61], and Motion in Limine with Respect to Anticipated Testimony by Plaintiffs' Expert Daniel Phillips [ECF No. 83]. Defendants argue that Phillips, an accident reconstructionist, is not qualified to provide the expert testimony he proffers, that his testimony will not help the jury, and that his opinions are unreliable. The Court agrees and will preclude Phillips's anticipated testimony from trial.

**I.   Background**

This case arises from a fatal automobile accident that occurred on September 22, 2017. [ECF No. 2 at ¶¶ 8-10]. Blake Haddox was traveling southbound on a motorcycle as Defendant Moore drove a semi-truck in a

northbound lane and turned left across traffic. [*Id.*]. The two collided, and Haddox died as a result. [*Id.* at ¶ 16]. Plaintiffs plan to present the testimony and opinions of Daniel Phillips as an expert in accident reconstruction. [ECF No. 69 at 2]. Defendants move to prohibit his testimony. [ECF No. 61].

Phillips's report indicates he has a wide range of expert opinions. [ECF No. 69-2 at 15–16]. The Court finds that many of his opinions pass on the credibility of witnesses, provide unqualified statements of fact from an accident he did not witness, and ultimately opine about the cause of the accident. For example, Phillips's opinions include:

- "Mr. Moore's testimony concerning the location of the southbound traffic is clearly in error."
- "Mr. Haddox had his headlight illuminated upon approach."
- "Mr. Moore's decision to turn across the path of approaching traffic was causal to the crash."

[ECF No. 69-2 at 15–16].

The Court will perform its gatekeeping function in analyzing Phillips's proffered opinions.

## II. Discussion

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert to testify and render an opinion when the witness "is qualified as an expert by knowledge, skill, experience, training, or education" and "it is more likely than not that:"

> (a) The "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;"
>
> (b) The "testimony is based on sufficient facts or data;"
>
> (c) The "testimony is the product of reliable principles and methods; and"
>
> (d) The expert has reliably applied "the principles and methods to the facts of the case."

Fed. R. Evid. 702.

Pursuant to Rule 702, the Court must perform a "gatekeeping role … of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The objective of this "gatekeeping requirement … is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat's Life Assur. Corp.*, 11-CV-475-GKF, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. at 149).

In exercising its gatekeeper duties, a district court must undertake a two-step analysis. *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation omitted). "First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Id.* (cleaned up). "If so qualified, the Court must then determine whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and relevant, in that it will assist the trier of fact." *Lippe v. Howard*, 287 F.Supp.3d 1271, 1278 (W.D. Okla. 2008) (citations omitted). The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (citation omitted).

### A. Phillips is qualified to testify as an accident reconstructionist, but unqualified to testify about "human factors" or make credibility determinations.

The first step in the *Daubert* inquiry is to determine whether Phillips is qualified by knowledge, skill, experience, training or education to render an opinion. *Lippe*, 287 F.Supp.3d at 1277–78. An expert's qualifications must provide "a foundation for a witness to answer a specific question." *Id.* at 1279 (citation and internal quotation marks omitted). An expert's qualifications must be both "(i) adequate in a general, qualitative sense (i.e., knowledge, skill, experience, training or education as required by Rule 702) and (ii)

4

specific to the matters he proposes to address as an expert." *Id.* (quotation and internal quotation marks omitted).

Defendants argue that Phillips is unqualified to testify about "human factors," unqualified to provide an "opinion as to whether Moore had a protected green arrow when he proceeded to make his turn," and unqualified to make credibility determinations. [ECF No. 61 at 6]. Notably, Defendants' attacks do not relate to Phillips's qualifications as an accident reconstructionist.

Plaintiffs attach Phillips's curriculum vitae to their response. [*See* ECF No. 69-1]. Phillips earned a Bachelor of Science degree in mathematics with a minor in physics from the University of North Texas, and a Master of Science degree in mathematics from Texas A&M University. [*Id.* at 1]. He is fully accredited by the Accreditation Commission of Traffic Accident Reconstruction and has worked as an accident reconstructionist for over 20 years. [*Id.* at 1, 3]. Phillips also has received specialized training in accident reconstruction. [*Id.* at 1–6]. Therefore, the Court finds Phillips qualified by knowledge, skill, experience, training, and education to render opinions about accident reconstruction.

However, the opinions proffered by Phillips extend beyond the realm of an accident reconstructionist. The Court agrees with Defendants that Phillips is unqualified to testify about "human factors." His curriculum vitae does not

5

reflect any specific training in this area. And during his deposition, Phillips acknowledged that his training in "human factors" stems from "some coursework at Northwestern University," what has been "provided by Crash Safety Solutions," and that which is "intrinsic … within reconstruction." [*See* ECF No. 61-2 at 4:19–22].[1] Additionally, as discussed in more detail below, the Court agrees that Phillips is unqualified to make credibility determinations.

## B. Phillips's proffered opinions are neither relevant nor reliable.

Because the Court has found Phillips qualified to testify as an accident reconstructionist, it must now determine whether his opinions are reliable and relevant. *Lippe*, 287 F.Supp.3d at 1278.

Evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and citations omitted). "The touchstone of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) (citation and internal quotation marks omitted).

---

[1] For clarity, the Court will cite to the CM/ECF record page number as opposed to the deposition page number for any deposition testimony referenced throughout this order.

Defendants contend Phillips's testimony will not aid the jury. [ECF No. 61 at 7]. One area of his proffered testimony concerns whether an eyewitness, Bruce Gourd, could view the traffic light at the time of the accident. [ECF No. 69-2 at 15 ("Mr. Gourd's stated vantage point upon approach would allow for him to observe the traffic lights including the absence of the left turn arrow.")]. Plaintiffs assert that Phillips's testimony and his recreation of the accident scene using 3D models will help the jury parse through conflicting testimony from individuals present at the scene of the subject accident. [ECF No. 69 at 6–7]. The Court is not persuaded that Phillips's testimony about whether Gourd could view the traffic light at the time of the incident is helpful to the jury. Gourd is listed as one of Plaintiffs' witnesses. [ECF No. 137]. The Court does not find it helpful for an expert to explain what Gourd observed when Gourd can tell the jury himself.

Additionally, the Court does not believe Phillips's other opinions or proposed testimony are helpful to the jury. "No special skill, knowledge, or expertise is needed to understand and draw conclusions from facts about common experiences." *Navarrete v. Wiebe*, No. CIV-13-708-D, 2014 WL 4716087, at *2 (W.D. Okla. Sep. 22, 2014). The Court is confident the jury will be fully equipped to form its own conclusions about the weight of Gourd's testimony, other fact witnesses' testimony, and the ultimate issues in this case. *See Stewart v. Brotherhood Mut. Ins. Co.*, No. 16-CV-488-JED-FHM,

7

2018 WL 4092018, at *1 (July 10, 2018) (excluding opinion testimony about the ultimate cause of an accident). Further, the facts here and the applicable traffic rules are "easily understood and within the common experience of jurors in Oklahoma, where private motor vehicle travel is the primary mode of transportation." *Navarrete*, 2014 WL 4716087 at *2.

Moreover, many of Phillips's opinions are statements of fact that are adequately covered by fact witnesses who were at the scene the night of the accident. For example, Phillips offers opinions that "Mr. Haddox was traveling southbound in the left lane of S. Memorial Drive immediately prior to the crash"; "Mr. Haddox had his headlight illuminated upon approach"; "Mr. Moore was attempting to turn left at the subject intersection"; and "[t]he independent witnesses were traveling in opposite directions …." [ECF No. 69-2 at 15]. These are all factual statements that do not require expert testimony.

Finally, Phillips's proposed opinions impermissibly invade the province of the jury. His opinions include, for example: "Mr. Moore's decision to turn across the path of approaching traffic was causal to the crash"; "[t]he independent witness statements are consistent with one another and indicate that Mr. Haddox had a green light upon approach"; and "Mr. Moore's testimony concerning the light sequence is not consistent with either of the independent witnesses." [ECF No. 69-2 at 15–16]. "Expert testimony

8

concerning the credibility of witnesses is prohibited, because the jury can make its own determinations of witness credibility and expert testimony on this issue is 'prejudicial and unfairly influences the jury.'" *Morris v. City of Tulsa,* No. 19-CV-073-CVE-JFJ, 2020 WL 7360283, at *3 (N.D. Okla. Dec. 15, 2020) (quoting *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014)). For these reasons, Phillips's proposed testimony about which witnesses to believe is inadmissible. Additionally, causation is an issue of fact for the jury and, as noted above, specialized knowledge is not required in this case for the jury to reach a decision. *See Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 173 (Okla. 2008) ("Causation usually is determined as a question of fact and not of law.").

For all the reasons set out above, the Court concludes that Phillips's opinions will not assist the jury and are therefore not relevant.

It is unnecessary for the Court to consider the reliability of Phillips's opinions when it has concluded his opinions are not relevant. *Lippe,* 287 F.Supp.3d at 1278 (evidence must be both relevant and reliable). However, the Court will address this factor because the parties briefed the issue.

In assessing reliability, the Court must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. *Daubert* cited four factors that aid in making a reliability determination:

> (1) Whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593–94). However, *Daubert* recognized that many factors will "bear on the inquiry" and explicitly chose not to make a "definitive checklist or test." *Daubert,* 509 U.S. at 593; *see also Kumho Tire Co.* at 150–151 ("[*Daubert*] made clear that its list of factors was meant to be helpful, not definitive."). A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. Whether other courts are familiar with and have accepted a methodology is relevant in determining the reliability of expert testimony. *See Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009) ("[W]hen experts employ established methods in their usual manner, a district court need not take issue under *Daubert*; however, where established methods are employed in new ways, a district court may require further indications of reliability.").

Defendants argue Phillips's opinions are not reliable because they are based on speculation and conjecture. [ECF No. 61 at 12–13]. Plaintiffs respond that Phillips's methodology is based on sufficient facts and data, that he reviewed an extensive list of documents to formulate his report, and that

10

he input the facts and data into a Virtual CRASH simulation. [ECF No. 69 at 7]. According to Plaintiffs, these factors render Phillips's opinions reliable. [*Id*.]. Focusing on Phillips's principles and methodology, the Court disagrees.

Throughout his report, Phillips relies on unreliable data to reach his opinions. For example, his report states, "an exact impact speed of the motorcycle cannot be determined with the available evidence" but the next sentence provides, "[a] subjective analysis of the damage using my experience does not suggest impact speeds over 30 mph." [ECF No. 69-2 at 13]. Phillips fails to explain what his subjective analysis takes into consideration. Further, he acknowledged in his deposition that the exact speed of the motorcycle cannot be determined from the evidence. [ECF No. 61-2 at 11:17–20]. Nevertheless, Phillips provides an opinion that "the physical evidence does not indicate excessive speed by Mr. Haddox." [ECF No. 69-2 at 13]. It appears Phillips unilaterally decided that Haddox was not travelling at an excessive speed.

Further, Phillips opines, "Mr. Haddox made a timely reaction to the intruding tractor-trailer but was unable to avoid a collision." [ECF No. 69-2 at 15]. His report states there was "pre-braking for either 42 or 62 feet" but does not indicate how he determined these distances. [*Id.* at 13]. Phillips testified that the evidence of Haddox braking is from witness Andrew Little's

11

report that indicated "Mr. Haddox was unable to stop in time …." [ECF No. 61-2 at 5:19–22]. However, Little's report states in total:

> Deceased was heading south on memorial going thru intersection at 51st Expressway and memorial when semi pulled out and he clipped the trailor [sic]. Approximate speed was around 55 mph. Semi driver OBVIOUSLY didn't see us coming! I was riding 10 ft back in outer lane, deceased was in inner lane. No helmet! Semi was heading north on Memorial and turning onto expressway heading west, we had a green light!

[ECF No. 69-6 at 1]. Little's report makes no mention of stopping or braking.[2] *Id*. Phillips's report does not reflect that he reviewed any other statement, interview, or deposition of Little. [ECF No. 69-2 at 2–3]. Phillips also testified he had no way to know where Haddox was located when he began to react to the impending crash. [ECF No. 61-2 at 13:23–14:5]. Therefore, Phillips's conclusions that Haddox made a timely reaction and engaged his brakes for either 42 or 62 feet are not explained or supported by any scientific fact or reliable expert analysis and cannot assist the jury in its fact finding.

Phillips's opinion that "[t]here is no reason to think Mr. Haddox was inattentive or slow to react" is similarly unreliable. [ECF No. 69-2 at 14]. He does not explain how he devised this opinion. His report contains no

---

[2] The report states that "police materials indicated that [Little] informed the officer(s) that he "slammed on his front break, but almost couldn't get stopped in time." [ECF No. 69-2 at 13]. However, it's unclear whether Little was referencing his own successful braking attempt, or the decedent's unsuccessful braking attempt with this comment. The report does not state where in "police materials" this statement could be found.

12

information indicating he has a way to determine when or how Haddox reacted. Thus, this opinion is also unreliable.

Nor is Phillips's opinion that "Mr. Moore intruded into the southbound lanes approximately 2.7 to 3.3 seconds before impact" reliable. [ECF No. 69-2 at 15]. He reaches this conclusion by stating:

> Analysis of the turning path of the tractor-trailer using typical acceleration values would indicate that Mr. Moore's travel took approximately 10-12 seconds from the stop bar to the point of impact. However, when the front of the tractor-trailer began to penetrate the southbound lanes would only be approximately 2.7 to 3.3 seconds.

[*Id.* at 14]. Nowhere does Phillips reference in his report the mass of Moore's truck or the load he was hauling. And Phillips does not explain what he considers to be a "typical acceleration value" or how such a value could be reliably derived from available evidence. Once again, this opinion is unreliable.

The only opinions in Phillips's report that may be helpful to the jury are:

> 11.  Mr. Haddox collided with the passenger side of the truck tractor in the left lane of southbound S. Memorial Drive.
>
> 12.  Mr. Haddox collided with the front of the trailer in the left lane of southbound S. Memorial Drive.
>
> 13.  Mr. Moore continued forward, running over the motorcycle and dragging it to the northwest.
>
> 14.  Mr. Moore continued forward, running over Mr. Haddox and dragging him to the northwest for approximately 40 feet.

13

[ECF No. 69-2 at 15]. However, Phillips does not explain how he reached these conclusions. The information containing the lane Haddox was in when he collided with the semi-truck contradicts the Tulsa Police Department's diagram indicating Haddox was travelling in the center lane, not the left turn lane when he hit the semi-truck. [*See* ECF No. 69-2 at 4]. And Phillips does not explain how he came to this different conclusion. Further, Phillips does not explain how he reached the conclusion that Moore ran over Haddox and dragged him for 40 feet. [*See id.* at 15]. Phillips potentially reached this conclusion by reviewing photographs from the accident scene. [*See id.* at 5–7]. However, his report is devoid of any reasoning or measurements and states that "the faint tire mark referenced in police records is likely unrelated to the subject crash." [*Id.* at 13]. In the absence of any explanation of *how* Phillips reached his conclusions, the Court cannot assume these conclusions are reliable. Fact witnesses who were present at the scene of the accident will be able to provide testimony that covers the same topics as Phillips's report.

The Court concludes that Phillips's opinions are not relevant and are unreliable. Therefore, his testimony is inadmissible.

### III.  Conclusion

Although the Court finds Phillips qualified to testify as an accident reconstructionist, it nonetheless concludes that his testimony should be

precluded from trial. As reflected above, his testimony will not aid the jury, impermissibly encroaches upon the jury's role, and is not reliable.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike Plaintiffs' Expert Daniel Phillips [ECF No. 61] is GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine with Respect to Anticipated Testimony by Plaintiffs' Expert Daniel Phillips [ECF No. 83] is DENIED as moot.

DATED this 25th day of September, 2025.

*Sara E. Hill*
Sara E. Hill
UNITED STATES DISTRICT JUDGE