IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANNY HADDOX, et al.,<br><br>    **Plaintiffs,**<br><br>v.<br><br>**CENTRAL FREIGHTLINES, INC.;**<br>**NICHOLAS ROSHON MOORE,**<br><br>    **Defendants.** | Case No. 18-CV-266-SEH-CDL |

## OPINION AND ORDER

Before the Court are Defendants Central Freightlines, Inc. and Nicholas Roshon Moore's (collectively, "Defendants") Motion to Strike Plaintiffs' Expert Lew Grill [ECF No. 62], Motion in Limine with Respect to Anticipated Testimony by Plaintiffs' Expert Lew Grill [ECF No. 92], and Motion to Strike Supplemental Expert Report [ECF No. 96]. Defendants argue that Grill is not qualified to provide expert testimony in this case, and that his opinions are neither relevant nor reliable. [ECF No. 62]. For the reasons outlined below, the Court declines to completely prohibit Grill from testifying at trial. However, his testimony will be limited to his knowledge, experience, and understanding of the customs, standards, and practices of the trucking industry.

I. <u>Background</u>

This case arises from a semi-truck accident that resulted in the death of Blake Haddox. On September 22, 2017, Haddox was traveling southbound on a motorcycle as Defendant Moore drove a semi-truck in a northbound lane and turned left across traffic. [ECF No. 2 at ¶¶ 8–10]. The two collided, and Haddox died. [*Id.* at ¶ 16]. Plaintiffs plan to present the expert testimony and opinions of Lew Grill. His proffered testimony relates to "four overarching areas" that include: (1) "[g]eneral trucking industry customs, practices, and standards"; (2) the "operating performance" of Moore; (3) CFL's "management practices"; and (4) "accident preventability from a commercial trucking industry standpoint." [ECF No. 62-1 at 24; ECF No. 96-3 at 4]. Defendants move to prohibit Grill's testimony. [ECF No. 62].

II. <u>Discussion</u>

A. **Motion to Strike Supplemental Report**

The Court will first address Defendants' motion to strike Grill's supplemental report. [ECF No. 96]. Plaintiffs provided Defendants with Grill's original expert report by the applicable deadline. [*See id.* at 4]. In accordance with an Amended Scheduling Order [ECF No. 58], Defendants timely filed a *Daubert* motion, requesting the Court strike Grill's expert testimony. [ECF No. 62]. Over two months later, on December 4, 2020—well after the deadline to exchange expert reports had passed—Plaintiffs provided

2

Defendants with a supplemental report prepared by Grill. [ECF No. 96 at 2–3; ECF No. 96-2]. Defendants move the Court to strike Grill's supplemental report as untimely. [ECF No. 96 at 3].

The Court understands Defendants' position. However, a review of the supplemental report indicates that the main change is the addition of two new opinions. [*See* ECF No. 96-3 at 17]. These new opinions are apparently offered as a result of information gleaned from the deposition of Defendant Central Freightlines, Inc.'s Corporate Representative Thomas Weeks, taken September 16, 2020. [*See Id.*; ECF No. 68 at 2]. Plaintiffs provided notice in their October 2020 response to Defendants' motion to strike that Grill had "not had a reasonable opportunity to review the transcript and update his opinions accordingly." [ECF No. 68 at 5].

Grill also does not appear to have substantively changed his opinions in any meaningful way. At the time Defendants received the supplemental report, trial was scheduled for April 19, 2021. [ECF No. 78]. Defendants still had over four months to review the supplemental report and prepare for trial. Further, on March 9, 2021, the Court struck the scheduling order due to the Covid pandemic and the Court's excess criminal case load. [ECF No. 139]. The Court acknowledges the importance of scheduling order deadlines and complying with the Court's orders and procedures. However, the Court cannot ascertain any prejudice Defendants suffered as a result of the delayed

3

supplemental report. Defendants have not requested leave to take Grill's deposition out of time; nor have they filed a rebuttal report. For these reasons, Defendants motion to strike Grill's supplemental report should be denied.

The Court will now perform its gatekeeping function and analyze Grill's proposed opinions.

### B. Motion to Strike Grill's Testimony

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert to testify and render an opinion when the witness "is qualified as an expert by knowledge, skill, experience, training, or education" and "it is more likely than not that:"

(a) The "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;"

(b) The "testimony is based on sufficient facts or data;"

(c) The "testimony is the product of reliable principles and methods; and"

(d) The expert has reliably applied "the principles and methods to the facts of the case."

Fed. R. Evid. 702.

Pursuant to Rule 702, the Court must perform a "gatekeeping role ... of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

4

579, 597 (1993). The objective of this "gatekeeping requirement … is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat's Life Assur. Corp.*, 11-CV-475-GKF, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. at 149).

In exercising its gatekeeper duties, a district court must undertake a two-step analysis. *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation omitted). "First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Id.* (cleaned up). "If so qualified, the Court must then determine whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and relevant, in that it will assist the trier of fact." *Lippe v. Howard*, 287 F.Supp.3d 1271, 1278 (W.D. Okla. 2008) (citations omitted). The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound

methodology and sufficient facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (citation omitted).

### 1. *Grill is qualified to testify about general trucking industry customs, practices and standards.*

The first step in the *Daubert* inquiry is to determine whether Grill is qualified by knowledge, skill, experience, training or education to render an opinion. *Lippe*, 287 F.Supp.3d at 1277–78. An expert's qualifications must provide "a foundation for a witness to answer a specific question." *Id.* at 1279 (citation and internal quotation marks omitted). An expert's qualifications must be both "(i) adequate in a general, qualitative sense (i.e., knowledge, skill, experience, training or education as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert." *Id.* (quotation and internal quotation marks omitted). "An expert cannot provide an opinion regarding matters on which [his] background and training do not provide a proper foundation." *Rimes v. MVT Serv., L.L.C.*, No. 19-cv-00282-JFH-JFJ, 2020 WL 8617211, at *1 (N.D. Okla. Aug. 25, 2020) (citation omitted).

Defendants argue Grill is unqualified because "none of Grill's background and experience concerns issues to be determined in this matter." [ECF No. 62 at 6]. Defendants assert Grill is not an expert in matters of "accident reconstruction, traffic signals or human factors." [*Id.* at 7]. However,

6

Defendants do not contend Grill is unqualified as an expert in the areas of general trucking industry customs, practices, and standards.

Plaintiffs respond that Grill is qualified as an expert in the field of commercial trucking based on his experience as a commercial truck driver, training instructor, training program director, safety director, and trucking consultant. [*See* ECF No. 68 at 3–4]. Plaintiffs also contend Grill has been qualified in numerous cases as an expert. [*Id.* at 4–5]. Plaintiffs provide Grill's curriculum vitae. [ECF No. 68-1]. The Court finds that Grill has decades of experience and involvement in the trucking industry. Therefore, he possesses the necessary training, experience, knowledge and skill to testify in the areas of general trucking industry customs, practices and standards.

### 2. *Some of Grill's proffered testimony is relevant and reliable.*

After concluding Grill is qualified as an expert in the areas of general trucking industry customs, practices, and standards, the Court must determine whether his opinions are reliable and relevant. *Lippe*, 287 F.Supp.3d at 1278.

Evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and

7

citations omitted). "The touchstone of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) (citation and internal quotation marks omitted).

Further, when analyzing reliability, the Court must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. *Daubert* cited four factors that aid in making a reliability determination:

> (1) Whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). However, *Daubert* recognized that many factors will "bear on the inquiry" and explicitly chose not to make a "definitive checklist or test." *Daubert,* 509 U.S. at 593; *see also Kumho Tire Co.* at 150–151 ("[*Daubert*] made clear that its list of factors was meant to be helpful, not definitive."). A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. Whether other courts are familiar with and have accepted a methodology is relevant in determining the reliability of expert testimony. *See Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009) ("[W]hen experts employ established

8

methods in their usual manner, a district court need not take issue under *Daubert*; however, where established methods are employed in new ways, a district court may require further indications of reliability.").

Defendants contend Grill's testimony will not aid the jury because the jury can make a liability determination in this case without the aid of an expert witness. [ECF No. 62 at 7–8]. Additionally, Defendants argue that "any opinion from Grill regarding general guidelines or best practices for motor carriers such as CFL has no relevance in this matter." [*Id.* at 9]. Defendants further argue that Grill's opinions of general trucking industry guidelines fail to have any connection to the specific claims to be determined in this case. [*Id.* at 10]. They also contend Grill's opinions are unreliable because his report "lacks any discussion as to the facts or data he utilized in arriving at his opinions," and claim that Grill's report fails to show a correlation between the various guidelines he identifies and the mechanics of the accident. [*Id.* at 10–12].

Plaintiffs disagree. [ECF No. 68 at 5–8]. They argue that Grill's testimony will help the jury and his "experience in the tractor-trailer industry will identify the exact industry standards the Defendants violated, and moreover the jury may consider those standards when determining whether Defendants were negligent in this case and whether that negligence ultimately caused the accident." [*Id.* at 8]. Plaintiffs also argue Grill's opinion

9

"is sufficiently reliable and relevant" because his testimony is based on "good grounds" and he relies on his "extensive experience in the trucking industry, the CDL Manual, and numerous other trucking publications." [*Id.* at 7].

As an initial matter, although not specifically raised by Defendants, the Court has concerns about representations in Grill's report. It appears Grill holds opinions that elevate the standard of care applicable to commercial truck drivers. For example, Grill states, "[i]n my opinion, the performance standards to accomplish this standard of care are *much different for truck drivers* than operators of smaller vehicles." [ECF No. 96-3 at 10 (emphasis added)]. He further states that "all commercial motor vehicles require a *higher performance standard* in order to safely operate." [*Id.* at 13 (emphasis added)].

"In Oklahoma, 'negligence is the failure to exercise ordinary care, which is that degree of care which ordinarily prudent persons engaged in the same kind of business usually exercise under similar circumstances.'" *Glass v. Mecham*, No. CIV-11-1267-C, 2014 WL 12042521, at *1 (W.D. Okla. July 7, 2014) (quoting *Mitchell v. Griffin Television, L.L.C.*, 60 P.3d 1058, 1061 (Okla. Civ. App. 2002) (cleaned up)). The phrase "engaged in the same kind of business" takes Moore's profession into account. *Id.* Accordingly, for Moore to be found negligent, he "must have failed to use ordinary care, meaning the degree of care which an ordinarily prudent person <u>engaged in professional</u>

10

<u>truck driving</u> would have exercised[.]" *Id*. (emphasis in original). Oklahoma does not subject Moore to a heightened standard of care simply because he is a commercial driver. Any suggestion to the contrary misstates the law. The Court will instruct the jury as to the proper standard of care. Therefore, Grill is prohibited from testifying about any opinion he holds concerning the standard of care applicable to commercial truck drivers.

Further, Plaintiffs propose Grill will provide opinions "regarding the hiring, retention and safety management of Central." [ECF No. 96-3 at 15–18]. The Court granted Defendant CFL summary judgment as to Plaintiffs' negligent hiring, retention, supervision and training claims. [ECF No. 152]. Therefore, these proposed opinions are not relevant and will not be permitted at trial.

Next, "an expert may not state [his] opinion as to legal standards nor may [he] state legal conclusions drawn by applying the law to the facts." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (quotation omitted). Further, an expert may not instruct the jury on the applicable law. *Specht v. Jensen*, 853 F.2d 805, 808–09 (10th Cir. 1988) (en banc). "[T]o satisfy the strictures of *Daubert*, an expert may not base [his] testimony upon assumptions that are not supported by the evidence." *Fanning v. Sitton Motor Lines, Inc.*, No. 08–CV–2464 CM/DJW, 2010 WL 4261476, at *7 (D.

11

Kan. March 10, 2010) (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1213 (10th Cir. 2004)).

Here, the Court finds Grill's proffered testimony about the accident and Moore's actions leading up to the accident conclusory without underlying factual support. "To put it simply, Grill's opinions are akin to him saying the accident occurred, therefore [Moore] violated these rules or regulations." *Silverthorn v. Killpack Trucking, Inc.*, No. 18-CV-209, 2020 WL 8515055, at *4 (D. Wyo. July 22, 2020) (limiting Grill's testimony in another semi-truck accident case). For example, Grill concludes Moore "[f]ailed to keep a proper lookout …; [f]ailed to safely and reasonably respond to a hazard ...; [f]ailed to drive defensively; [and] [f]ailed to manage his space …." [ECF No. 96-3 at 29]. Grill does not explain how he knows this or what facts he relied upon to reach these conclusions. Such conclusory statements are impermissible, and the Court will not allow Grill to testify about these topics.

Defendants specifically challenge Grill's opinion that the accident was avoidable or preventable. [ECF No. 62 at 8–9]. The Court similarly finds this opinion an impermissible conclusion. These are specific questions of fact for the jury to decide. *Silverthorn*, 2020 WL 8515055, at *4. Thus, Grill is prohibited from testifying about the avoidability or preventability of the accident.

Any testimony that Moore violated law, regulations, procedures, or policies are likewise impermissible legal conclusions. "[A]n expert [witness] may not state … legal conclusions drawn by applying the law to the facts." *Christiansen*, 332 F.3d at 1283.

Finally, Grill may not opine about who caused the accident. Grill's report provides that "Moore, because of failing to perceive a hazard in time, and failing to make proper safety decisions when he ultimately chose risk over safety by intruding into the approaching traffic stream, caused this collision." [ECF No. 96-3 at 29]. Such an opinion impermissibly invades the province of the jury. Causation is an issue of fact for the jury. *See Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 173 (Okla. 2008). Therefore, Grill is prohibited from providing any testimony about who did or did not cause the accident.

In sum, the Court will allow Grill to testify about his knowledge, experience and understanding of the customs, practices, and standards of the trucking industry (the first "overarching area" identified by Grill, ECF No. 96-3 at 4). The Court will not allow Grill to testify beyond this limited area. He is specifically prohibited from testifying about the remaining three "overarching areas" identified in his report. [*See id*.]. Further, Grill may not offer any opinion that forms a legal conclusion, as set forth above, nor opine that Moore or CFL were negligent in any way.

13

### III.  Conclusion

Grill's knowledge, skill and experience in the trucking industry will help the jury understand the evidence and determine the factual issues of this case. However, much of Grill's proffered testimony is excluded because it reaches unsupported conclusions and invades the province of the jury. The jury is more than capable of reaching their own conclusions as to the ultimate issues in this case.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike Plaintiffs' Expert Lew Grill [ECF No. 62] is DENIED. The Court declines to completely prohibit Grill from testifying at trial.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine with Respect to Anticipated Testimony by Plaintiffs' Expert Lew Grill [ECF No. 92] is GRANTED IN PART and DENIED IN PART as outlined above. Grill is prohibited from testifying about the topics identified by the Court in this Order. Any other concerns possessed by Defendants may be addressed by a contemporaneous objection at trial or through cross-examination.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Supplemental Report [ECF No. 96] is DENIED.

DATED this 25th day of September, 2025.

*Sara E. Hill*
_____
Sara E. Hill
UNITED STATES DISTRICT JUDGE